Elmer J. Thompson v. Commissioner. Helen H. Thompson v. Commissioner.
Thompson v. Commissioner
Docket Nos. 46705, 46706.
United States Tax Court
T.C. Memo 1955-2; 1955 Tax Ct. Memo LEXIS 337; 14 T.C.M. (CCH) 5; T.C.M. (RIA) 55002; January 10, 1955
*337 Held, the record does not establish a certain alleged bad debt became worthless in the taxable year. Nathan J. Neilson, Esq., 523 West 6th Street, Los Angeles, Calif., for the petitioners. John J. Burke, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FSSAN, Judge: The respondent determined deficiencies in income tax for the year 1949 in the amount of $150 as to each petitioner. Elmer J. Thompson will be hereinafter sometimes referred to as petitioner. The sole question involved is the validity of an alleged bad debt. [Findings of Fact] Part of the facts were stipulated, as follows: On or about July 10, 1945, the petitioners purported to enter into a limited partnership agreement with Jack Miller, to be known by the name "Miller Mining Company", for the purpose of engaging in a mining business in Arizona, by signing a purported limited partnership agreement, such agreement providing that petitioners were to receive a one-eighth (1/8) interest in and to all of the profits of the partnership. On or about December 12, 1945, the petitioners purported to acquire an additional one-eighth (1/8) interest in the aforesaid limited partnership *338 by signing another written agreement. The petitioners advanced to Jack Miller, in reliance upon and in accordance with the provisions of the aforesaid purported limited partnership agreement, the total sum of $14,700, on the dates and in the amounts set forth below: Amount
Date of
of
Check
Type of Check
Check
Feb. 6, 1945
Taxpayer's Personal
$ 1,500
Aug. 6, 1945
Taxpayer's Personal
1,000
Aug. 13, 1945
Taxpayer's Personal
1,500
Oct. 29, 1945
Taxpayer's Personal
2,500
Dec. 14, 1945
Bank Cashier's Check
6,000
Mar. 7, 1946
Bank Cashier's Check
1,500
Apr. 6, 1946
Bank Cashier's Check
700
Total
$14,700
The petitioners' U.S. Individual Income Tax Returns for the years 1947 and 1948, as filed with the collector of internal revenue, Los Angeles, California, disclosed no capital gains. Testimony adduced at the hearing establishes the following further facts: No Certificate of Limited Partnership for the purported limited partnership was ever executed, sworn to or acknowledged by the taxpayers. No Certificate of Limited Partnership was ever filed with the Clerk of Los Angeles County. No part of the aforesaid sums advanced by *339 the taxpayers to Jack Miller in connection with the purported limited partnership was ever recovered by or returned to the taxpayers. No financial statement or copies of partnership tax returns pertaining to the alleged partnership were ever received by the taxpayers. The taxpayers' last contact with Jack Miller was some time near the middle of the year 1947. The taxpayers were furnished information in the year 1947 by Jack Miller with respect to three allegedly then-existing mines. No permit authorizing the sale and issuance of securities was ever issued by the Department of Investment, Division of Corporations, State of California, to Jack Miller and/or Miller Mining Co. to and including May 21, 1954. Thompson received no financial reports of any kind from the operations of the mining venture. He did receive a written report or reports that there were some sales of ore by Jack Miller to the Kennecott Copper Company. The only other reports Thompson received were verbal assurances from Miller that the project was going well and that the profits were foreseeable. Thompson never received any return of money from Miller nor any funds representing profits from the mining *340 venture. In the summer of 1946, petitioner made a trip to Kingman, Arizona. Miller conducted petitioner through two mines which he represented to him were their mining property and in these mines men were working, mining equipment was in evidence and actual mining of gold operations was being carried on. Thompson has never visited the mining site since. Petitioner does not know whether the mine is still operating. He never took any steps to verify Miller's title to the property in question. Petitioner does not know whether or not his funds were ever in fact invested in the mining venture. On the above facts, each petitioner asks approval of a deduction of a bad debt in the amount of $1,000 for the year 1949, which deduction respondent disallowed. Petitioner predicates his argument largely on the failure of Miller to comply with the law of California governing partnerships. He concludes his brief with the following paragraph: "It has been clearly shown that this is a matter in which local law will govern, and under local law, the said Jack Miller became indebted to the taxpayers, on several separate and distinct grounds, any one of which would have been sufficient standing *341 alone, and no part of the money was ever recovered. Looking back upon the transaction, the debt probably became bad sometime near the middle of the year 1947 when the said Jack Miller abandoned the venture. So long as he was actively engaged in operating any of the mines, he might have at any moment hit 'pay dirt' and the taxpayers would have had no trouble in collecting. While the taxpayers hoped and believed through the year 1948 they would recover some of their loss and did not claim it until the year 1949, under the circumstances, they would still be entitled to the amount claimed on their returns, even if it is determined that the loss occurred in the year 1947, because of the seven-year statute of limitations on bad debts and the carry-forward provisions relating to capital losses." [Opinion] Respondent submits in support of his disallowance that the record here made does not establish a debtor-creditor relationship between petitioner and Miller, and further, that the record establishes affirmatively that the debt, if any debt existed, became worthless prior to 1949. We have concluded that respondent should be sustained. The record before us fails to establish a personal *342 debtor-creditor relationship between petitioner and Miller. Moreover, the record shows, and petitioner, as appears above, admits that the debt became worthless prior to the year 1949. Further, there is no proof that the debt had any value at the beginning of the taxable year. Either conclusion is fatal to petitioners' case. We are wholly unimpressed by petitioners' argument that the case is governed by California law. This is not the sort of case where State law governs. It is a Federal question and refund that McGovern might have received for the year 1949. The procedure followed in the second district of New York for refunds depends on the law as found in the Federal statutes and the decisions consequent thereon. Decisions will be entered for the respondent.